```
                    ┌──────────────────────────────┐
                    │            FILED             │
                    │   CLERK, U.S. DISTRICT COURT │
                    │   ┌──────────────────────┐   │
                    │   │      6/11/2025        │   │
                    │   └──────────────────────┘   │
                    │  CENTRAL DISTRICT OF CALIFORNIA│
                    │  BY:      E.C.        DEPUTY   │
                    └──────────────────────────────┘
```

**UNDER SEAL**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>KRISTERPHER TURNER,<br>  aka "Kris Turner,"<br>  aka "Red,"<br>  aka "Red Boy,"<br>  aka "Bullet,"<br>TORIANO KNOX,<br>  aka "Scooby,"<br>  aka "Dwight,"<br>KENYA JONES,<br>  aka "Kenya Emua Jones,"<br>  aka "Kenya Hunt,"<br>JOYCE JOHNSON,<br>  aka "Ms. Jay,"<br><br>            Defendants. | CR No. 2:25-CR-00462-CVD<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Mail Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 286: Conspiracy To Submit False, Fictious, or Fraudulent Claims; 18 U.S.C. § 1512(a)(1)(C): Attempt to Kill a Witness; 18 U.S.C. § 924(c)(1)(A)(ii), (iii): Possess, Use, Carry, Brandish, and Discharge a Firearm in Furtherance of, and During and in Relation to, a Crime of Violence; 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

THE DEFENDANTS

1.    Defendant KRISTERPHER TURNER, also known as ("aka") "Kris Turner," "Red," "Red Boy," and "Bullet," was a resident of Harbor City, California.  Defendant TURNER was the owner, sole proprietor, manager, or de facto owner of multiple companies, which he maintained for the purpose of committing fraud against the United States, including Mark Sandridge Auto Body, LLC; Turner Auto Shop LLC; Kris Turner Enterprise LLC; and Doan Transportation LLC.  Defendant TURNER also maintained or had control over bank accounts established for each of these companies.  For tax years 2020 through 2022, none of the companies had substantial business operations, nor did they have any employees other than defendant TURNER or his wife.  In fact, none of the four companies filed incorporation paperwork with the California Secretary of State until October 2022, at the earliest.

2.    Defendant TORIANO KNOX, aka "Scooby" and "Dwight," was a resident of Los Angeles, California.  Defendant KNOX was the owner, sole proprietor, and manager of Knox Lawn Service LLC.  Defendant KNOX maintained and controlled bank accounts established for Knox Lawn Service.  For tax years 2020 through 2022, the company did not have substantial business operations, nor did it have employees other than defendant KNOX.  In fact, Knox Lawn Service did not file incorporation paperwork with the California Secretary of State until November 2022.

3.    Defendant KENYA JONES, aka "Kenya Emua Jones" and "Kenya Hunt," was a resident of Compton, California.  Defendant JONES was the owner, sole proprietor, manager, or de facto owner of multiple companies, including K.M.J. Innovation LLC (also known as KMJ Innovation), KMJ Freight LLC, and Famtastic Katering LLC.  Defendant

JONES also maintained or had control over bank accounts established for each of these companies.  For tax years 2020 through 2022, none of the companies had substantial business operations or employees other than defendant JONES or her husband.

4.    Defendant JOYCE JOHNSON, aka "Ms. Jay," was a resident of Victorville, California.  Defendant JOHNSON was the owner, sole proprietor, and manager of a company named Jay's Mobile Cleaning Service LLC.  Defendant JOHNSON maintained and controlled bank accounts established for Jay's Mobile Cleaning Service.  For tax years 2020 through 2022, the company did not have substantial business operations or employees other than defendant JOHNSON.  In fact, no incorporation paperwork for Jay's Mobile Cleaning Service was filed with the California Secretary of State until December 2022.

<u>THE CORONAVIRUS RESPONSE CREDITS</u>

5.    The Internal Revenue Service ("IRS") was an agency of the United States responsible for collecting taxes and administering the Internal Revenue Code.

6.    To help alleviate the impact of COVID-19, the Family First Coronavirus Response Act ("Coronavirus Response Act") authorized tax credits that would reimburse businesses for the wages paid to employees who could not work because of the pandemic.  Specifically, the Coronavirus Response Act and its amendments authorized the IRS to give a credit against employment taxes to reimburse businesses for the wages paid to employees who were on sick or family leave and could not work because of COVID-19, also known as the "paid sick and family leave credit" (the "Coronavirus Response Credit").  The credit equaled the wages the business paid to employees during the eligible period of sick or family leave, subject to a maximum amount.

7.    A taxpayer could, on behalf of her business, request the Coronavirus Response credit on an IRS Form 941 ("Form 941"), also known as the Employer's Quarterly Federal Tax Return.  The Form 941 required the taxpayer to truthfully state, among other things, the number of employees, the business's quarterly wages, and the Coronavirus Response Credit wage amount claimed for the quarter reported.  The self-reported Coronavirus Response Credit would be used, in conjunction with other information from the taxpayer, to calculate the refund, or "overpayment," that the taxpayer was requesting from the IRS.  Using IRS Form 941, the taxpayer could either request that the IRS carry over any refunds to the next quarter or pay the refunds to the taxpayer which the IRS would issue in the form of United States Treasury Checks.

8.    Similarly, a taxpayer could also request the Coronavirus Response credit on an IRS Form 944 ("Form 944"), also known as the Employer's Annual Federal Tax Return.  The Form 944 required the taxpayer to truthfully state, among other things, the refundable portion of the Coronavirus Response Credit for the tax year claimed by the business.  Like refunds or overpayments requested on Form 941s, the IRS would issue refunds requested on Form 944s in the form of United States Treasury Checks.

9.    To submit either a Form 941 or a Form 944, a taxpayer was required to obtain from the IRS an Employment Identification Number, or "EIN," for the business, and to have included the EIN on each filing.

10.    Forms 941 and 944 had to be submitted online, including through commercially available tax preparation services, like TaxBandits, which could be used to file corporate tax returns online.

4

11.  After it accepted a Form 941 or Form 944, and the IRS determined that a tax refund was owed, the IRS would cause the United States Department of the Treasury to issue a Treasury Check addressed to the business containing the amount of the refund.  The Treasury Check would be mailed via the United States mail from one of two locations, including Ogden, Utah, to the mailing address that the business owner provided on the EIN for the business.

B.  THE OBJECT OF THE CONSPIRACY

12.  Beginning no later than in or around June 2022 and continuing until at least in or around December 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants TURNER, KNOX, JONES, and JOHNSON conspired with one another and with others known and unknown to the Grand Jury to commit mail fraud, in violation of Title 18, United States Code, Section 1341.

C.  THE MANNER AND MEANS OF THE CONSPIRACY

13.  The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.  Defendant TURNER would coordinate a tax fraud scheme whereby he and his co-conspirators would use TaxBandits to submit fraudulent Forms 941 and 944 to the IRS to request tax refunds and Coronavirus Response Credits for businesses, including bogus companies, that did not, in fact, pay any sick and family wage credits to any employees at any time.  Defendant TURNER and his co-conspirators would submit these fraudulent filings on behalf of their own purported businesses, but also on behalf of others recruited to the scheme (the "fraud clients").

b.    Defendant TURNER would direct and manage recruiters, including defendant KNOX, defendant JONES, and Co-Conspirator 1, to recruit these fraud clients.  In particular, defendant KNOX would recruit various romantic partners, including defendant JONES, defendant JOHNSON, and others, including another romantic partner, ("KNOX Recruit 1,") and that romantic partner's friend ("KNOX Recruit 2"), to the fraud. Additionally, defendant JONES, after being recruited by defendant KNOX, would recruit her friends and family to the fraud (the "JONES Recruits"), resulting in false Form 941s being submitted in the names of at least ten businesses.

c.    Recruiters like defendants KNOX and JONES would solicit fraud clients to join the scheme.  Most fraud clients would provide their personal identifying information, including their names, dates of birth, social security numbers, and addresses, so that the co-conspirators, including defendant TURNER, could use that information to establish fake businesses and file fraudulent tax filings on behalf of those businesses.  Other fraud clients would provide information about preexisting businesses that were ineligible to receive Coronavirus Response Credits so that the co-conspirators, including defendant TURNER, could use that information to file fraudulent tax filings on behalf of those businesses.

d.    Defendant TURNER and his co-conspirators would create the appearance of legitimacy for their own and their fraud clients' fake businesses by applying to the IRS for EINs and to the California Secretary of State for incorporation paperwork for the businesses.

e.    Defendant TURNER would charge a "processing fee" of approximately $1,050 to establish EINs and file incorporation paperwork for shell companies with the California Secretary of State

in order to create a paper record for fake businesses used in the conspiracy.  In some instances, recruiters, like defendants JONES and KNOX, would facilitate the transfer of the processing fee from their fraud clients to defendant TURNER.

f.    To ensure that they and/or their fraud clients would receive the Treasury Checks that would be issued in the names of the fake or unqualified businesses, for each business, defendants TURNER, KNOX, JONES, and JOHNSON would use or cause to be used mailing addresses to which they or their fraud clients had access. Defendants TURNER, KNOX, JONES, and JOHNSON knew that, by doing so, they would cause the IRS, through the Department of the Treasury, to mail any Treasury Checks to the businesses at those mailing addresses, thereby enabling them or their fraud clients to take possession of the Treasury Checks so mailed.

g.    Fraud participants, like defendants TURNER, JONES, and JOHNSON and the JONES Recruits, would receive Treasury Checks in the mail as a result of the conspiracy's fraudulent tax filings and would attempt to deposit those Treasury Checks in business accounts opened in the name of the fake businesses at various banks.

h.    For each fraud client that obtained Treasury Checks through this conspiracy, defendant TURNER would charge a percentage of the fraud proceeds that amounted to somewhere between 20% to 40% of funds received.

i.    Defendant TURNER would direct fraud clients and his recruiters to pay a portion of the fraud proceeds to defendant TURNER personally or to entities controlled by him, or his co-conspirators, as kickbacks, including through cashiers' checks, CashApp, Zelle, or cash.

j.   In addition to defendant TURNER's portion, the recruiter who brought the fraud client to defendant TURNER would often receive a portion of the fraud proceeds paid out to the fraud client.

k.   Because the fake businesses were entirely fabricated, and the genuine businesses were ineligible to receive the Coronavirus Response Credits claimed on their fraudulent tax filings, fraud clients would not be familiar with the details of the businesses they purportedly owned and controlled and would frequently contact defendant TURNER for information about those businesses in order to supply that information to the IRS or banks who requested details about the businesses.

l.   Defendant TURNER would maintain records to document the fraudulent filings he facilitated for each fraud client, including the EIN, the date of incorporation, the purported business address, and the claimed Coronavirus Response Credit for each quarter for which Form 941s were filed, and would sometimes send such documentation to fraud clients who needed such business details to respond to bank or IRS inquiries.

14.   In total, between in or around June 2020 and in or around December 2024, defendants TURNER, KNOX, JONES, and JOHNSON, together with their co-conspirators, submitted and caused the submission of fraudulent Forms 941 and 944 for at least 148 companies, seeking a total of approximately $247,956,938 in tax refunds to which they were not entitled.  In reliance on the fraudulent Forms 941 and 944, and the false statements therein, the IRS issued Treasury Checks in the total amount of at least approximately $93,036,164.

a.   In particular, the fraudulent Forms 941 and 944 for the four companies that defendant TURNER owned or controlled sought a total of approximately $7,784,685 in tax refunds.  In reliance on those fraudulent Forms 941 and 944, and the false statements therein, the IRS issued Treasury Checks in the total amount of $3,288,332.48.

b.   The fraudulent Form 941s for the company that defendant KNOX owned or controlled sought a total of $962,438.53 in tax refunds.

c.   The fraudulent Form 941s for the companies that defendant JONES owned or controlled sought a total of $5,064,284.49 in tax refunds.  In reliance on those fraudulent Form 941s, the IRS issued Treasury Checks in the total amount of $1,655,939.23.

d.   The fraudulent Form 941s for the company that defendant JOHNSON owned or controlled sought a total of $883,810.84 in tax refunds.  In reliance on those fraudulent Form 941s, the IRS issued Treasury Checks in the total amount of $883,810.84.

D.   <u>OVERT ACTS</u>

15.   In furtherance of the conspiracy and to accomplish its object, defendants TURNER, KNOX, JONES, and JOHNSON, together with others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed the following overt acts, among others, in the Central District of California, and elsewhere:

**<u>Defendant TURNER Filed Fraudulent Tax Returns for His Fake Businesses</u>**

<u>Overt Act No. 1:</u>   On October 15, 2022, defendant TURNER, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of five false Form 941s for defendant TURNER's company, Mark Sandridge Auto Body, for Q1 2021 through Q1

2022, which falsely represented that, for Q1 2021, the business was owed a tax refund of $407,017.01 due to Coronavirus Response Credits for sick and family leave wages purportedly paid out to employees during that quarter.

Overt Act No. 2:   On October 28, 2022, defendant TURNER, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of seven false Form 941s for defendant TURNER's company, Kris Turner Enterprise, for Q2 2020 through Q4 2021, which falsely represented that, for Q4 2021, the business was owed a tax refund of $68,729.67 due to Coronavirus Response Credits for sick and family leave wages purportedly paid out to employees during that quarter.

Overt Act No. 3:   On January 12, 2023, after having received notice from the IRS that his Form 941s for Mark Sandridge Auto Body for the four quarters in 2021 were flagged for further inquiry, defendant TURNER, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, a false Form 944 for Mark Sandridge Auto Body that falsely represented that, for tax year 2021, the business was owed a federal tax refund of $595,547.29 due to Coronavirus Response Credits for sick and family leave wages purportedly paid out to employees for that tax year.

Overt Act No. 4:   On February 14, 2023, as a result of the Form 944 described in Overt Act No. 3, defendant TURNER, together with other co-conspirators, fraudulently caused a Treasury Check addressed to Mark Sandridge Auto Body in the amount of $528,254.29 to be placed in the U.S. Mail and mailed to an address in Los Angeles County accessible to or controlled by defendant TURNER.

1    <u>Overt Act No. 5:</u>    On February 16, 2023, defendant TURNER,

2    together with other co-conspirators, caused to be submitted to the

3    IRS, via TaxBandits, one of seven false Form 941s for defendant's

4    company, Doan Transportation, for Q2 2020 through Q4 2021, which

5    falsely represented that, for Q2 2020, the business was owed a

6    federal tax refund of $297,015.97 due to Coronavirus Response Credits

7    for sick and family leave wages purportedly paid out to employees

8    during that quarter.

9    <u>Overt Act No. 6:</u>    On February 18 and 19, 2023, defendant

10   TURNER, together with other co-conspirators, caused to be submitted

11   to the IRS, via TaxBandits, one of nine false Form 941s for his

12   company, Turner Auto Shop, for Q2 2020 through Q2 2021, which falsely

13   represented that, for Q4 2020, the business was owed a federal tax

14   refund of $293,972.89 due to Coronavirus Response Credits for sick

15   and family leave wages purportedly paid out to employees during that

16   quarter.

17   <u>Overt Act No. 7:</u>    On March 21, 2023, as a result of the Form

18   941 described in Overt Act No. 6, defendant TURNER, together with

19   other co-conspirators, fraudulently caused a Treasury Check addressed

20   to Turner Auto Shop, totaling $283,775.42, to be placed in the U.S.

21   Mail and mailed to an address in Los Angeles County accessible to or

22   controlled by defendant TURNER.

23   **Defendant TURNER Conspires With Others to Recruit Fraud Clients to**

24   **File False Claims and Get Kickbacks**

25   <u>Overt Act No. 8:</u>    On October 3, 2022, defendant TURNER sent a

26   recruitment text message that explained to potential fraud clients

27   that his scheme involved "form 941s," required the fraud clients to

28   have a "sole membership," and to pay a "non refundable app fee

upfront," and cautioned that the fraud clients shouldn't "ask me a ton of questions either bc this money is FREE MONEY."

Overt Act No. 9:    On May 18, 2023, defendant TURNER texted a fraud client ("Fraud Client 1") his fee structure for the fraud: specifically, (1) that that if the fraud client already had a business with an EIN, then the application fee was $800, (2) that if the fraud client did not have a business, defendant would charge $1,050 and require the fraud client to provide her name, address, phone number, and social security number, and (3) in either event, that defendant TURNER's kickback would be 40% of any refunds obtained.

Overt Act No. 10:    On May 26, 2023, in response to text messages from a fraud client ("Fraud Client 2") requesting information to relay to the bank about her fake business, including the number of employees; annual gross sales; and reported date, month, and year, defendant TURNER supplied the information that he helped fabricate for that business, responding: "15 employees in 2019 and now you have 5 employees," "300k" in annual sales, and a reported date of "January 2023."

Overt Act No. 11:    On July 4, 2023, in response from a text message from another fraud client ("Fraud Client 3") advising that Fraud Client 3 had received fraud proceeds and inquiring, "What's the company name I should have the cashier check made out too? [sic]" defendant TURNER responded, "Mark SandRidge Auto Body . . . $21590.00 . . . Cash $5,000."

Overt Act No. 12:    On July 18, 2023, in response to text messages from a fraud client ("Fraud Client 4") asking defendant TURNER to "Remind me the address for Turner autoshop . . . I will

send $25k a day to get payments caught up," defendant TURNER responded: "Just send 25k a week and I'll grab 5k in cash from you a week.  Don't want them to see you pay me every day and I'll get 2 more accounts for you."

**Defendant KNOX Joins Scheme and Files False Claims for Knox Lawn Service**

Overt Act No. 13:  On or about October 25, 2022, defendants TURNER and KNOX, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of nine false Form 941s for defendant KNOX's company, Knox Lawn Service, for Q2 2020 through Q2 2022, which falsely represented that, for Q2 2020, the business was owed a tax refund of $172,162.60 due to Coronavirus Response Credits for sick and family leave wages purportedly paid out to employees during that quarter.

Overt Act No. 14:  On December 2, 2022, defendants TURNER and KNOX, together with other co-conspirators, caused to be filed with the California Secretary of State a Statement of Information on behalf of Knox Lawn Service, which listed defendant KNOX as its CEO.

Overt Act No. 15:  On December 2, 2022, defendant KNOX paid defendant TURNER $350 for facilitating defendant KNOX's fraudulent tax filings.

**Defendant KNOX Becomes a Recruiter for Defendant TURNER and Recruits Defendant JOHNSON**

Overt Act No. 16:  On or about January 18, 2023, defendants TURNER, KNOX, and JOHNSON, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of nine false Form 941s for defendant JOHNSON's company, Jay's Mobile Cleaning Service, for Q2 2020 through Q2 2022, which falsely represented that,

for Q4 2020, the company was owed a tax refund of $272,246.65 due to Coronavirus Response credits for sick and family leave wages that the company purportedly paid out to employees during that quarter.

Overt Act No. 17:    On January 19, 2023, defendant JOHNSON transferred $300 to defendant TURNER for facilitating defendant JOHNSON's fraudulent tax filings.

Overt Act No. 18:    On February 28, 2023, as a result of the Form 941 described in Overt Act No. 16, defendants TURNER, KNOX, and JOHNSON, together with other co-conspirators, fraudulently caused a Treasury Check addressed to Jay's Mobile Cleaning Service for $253,358.97, to be placed in the U.S. Mail and mailed to an address in Los Angeles County that defendant JOHNSON had access to or controlled.

Overt Act No. 19:    On or about April 8, 2023, defendant JOHNSON deposited fraudulent proceeds described in Overt Act No. 18, into a bank account she established for Jay's Mobile Cleaning Services.

Overt Act No. 20:    Between January 19, 2023 and May 9, 2023, defendant JOHNSON distributed or caused to be distributed approximately $262,158.75 to defendant TURNER and $69,931 to defendant KNOX as their respective cuts of the proceeds.

Overt Act No. 21:    On May 24, 2023, defendant JOHNSON sent text messages to defendant TURNER requesting he provide her paperwork for Jay's Mobile Cleaning Services and asking him to call her back because the bank had questioned the validity of defendant JOHNSON's business and put a hold on her account, preventing her from making any withdrawals of her fraudulent proceeds.

Overt Act No. 22:    On May 24, 2023, when defendant TURNER did not pick up defendant JOHNSON's call, defendant KNOX texted defendant TURNER that he should "Hit jay."

**Defendant KNOX Recruits KNOX Recruit 1**

Overt Act No. 23:    On April 17, 2023, defendant KNOX transferred defendant TURNER the $1,050 processing fee to set up a fake company in the name of KNOX Recruit 1.

Overt Act No. 24:    On or aboutApril 25, 2023, defendants TURNER, KNOX, and KNOX Recruit 1, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of nine false Form 941s for KNOX Recruit 1's company for Q2 2020 through Q2 2022, which falsely represented that, for Q3 2020, the business was owed a tax refund of $283,001.12 due to Coronavirus Response Credits for sick and family leave wages paid out to employees during that quarter.

Overt Act No. 25:    On April 27, 2023, defendant TURNER used his credit card to pay the California Secretary of State to file a Statement of Information for KNOX Recruit 1's fake company.

Overt Act No. 26:    On May 22, 2023, KNOX Recruit 1 calculated a 40% kickback fee based on her anticipated refund amounts from the IRS for her fraudulent business, which she discussed over a phone call with defendant KNOX.

Overt Act No. 27:    On May 22, 2023, after speaking with KNOX Recruit 1, defendant KNOX texted defendant TURNER that "[KNOX Recruit 1] got amounts in the mail should be soon."

**Defendant KNOX Recruits KNOX Recruit 2**

    Overt Act No. 28:   On May 2, 2023, KNOX Recruit 1 texted defendant KNOX the name, Social Security Number, date of birth, and business name used by KNOX Recruit 2.

    Overt Act No. 29:   On May 2, 2023, in response to the text message described in Overt Act No. 28, after defendant KNOX texted KNOX Recruit 1 "Do she know percentage" referring to the kickbacks that KNOX Recruit 2 would owe, KNOX Recruit 1 responded, "Yup . . . She does have tax questions eventually."

    Overt Act No. 30:   On or about May 17, 2023, defendants TURNER, KNOX, and KNOX Recruit 2, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of eight false Form 941s for KNOX Recruit 2's company for Q2 2020 through Q1 2022, which falsely represented that, for Q2 2020, the business was owed a tax refund of $299,228.05 due to Coronavirus Response Credits for sick and family leave wages purportedly paid out to employees during that quarter.

    Overt Act No. 31:   On May 20, 2023, one day after defendant TURNER texted defendant KNOX that he needed "to pick up paper work" for KNOX Recruit 2's company, defendant KNOX asked to meet with defendant TURNER at a commercial complex in Gardena, California, where defendant JONES leased a unit.

    Overt Act No. 32:   On August 3, 2023, KNOX Recruit 2 texted defendant TURNER, "here are the docs I received," and sent defendant TURNER photos of IRS letters addressed to KNOX Recruit 2's business.

**Defendant KNOX Recruits Defendant JONES to the Scheme, Who Uses Three Unqualified Businesses To File False Tax Returns**

<u>Overt Act No. 33:</u>   On October 24, 2022, defendants TURNER, JONES, and KNOX, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of eight false Form 941s for defendant JONES's company, KMJ Freight, for Q2 2020 through Q1 2022, which falsely represented that, for Q2 2020, the business was owed a tax refund of $353,670, due to Coronavirus Response Credits for sick and family leave wages purportedly paid out to employees during that quarter.

<u>Overt Act No. 34:</u>   On October 26, 2022, defendants TURNER, JONES, and KNOX, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of nine false Form 941s for defendant JONES's company, Famtastic Katering, for Q2 2020 through Q2 2022, which falsely represented that, for Q2 2020, the business was owed a tax refund of $214,597, due to Coronavirus Response Credits for sick and family leave wages purportedly paid out to employees during that quarter.

<u>Overt Act No. 35:</u>   On February 14, 2023, defendants TURNER, JONES, and KNOX, together with other co-conspirators, caused to be submitted to the IRS, via TaxBandits, one of eight false Form 941s for defendant JONES's company, KMJ Innovation, for Q2 2020 through Q1 2022, which falsely represented that for Q3 2020, the business was owed a tax refund of $305,041.66, due to Coronavirus Response Credits for sick and family leave wages that the company purportedly paid out to employees during that quarter.

<u>Overt Act No. 36:</u>   On March 28, 2023, as a result of the Form 941s described in Overt Act No. 35, defendants TURNER, KNOX, and JONES, together with other co-conspirators, fraudulently caused a Treasury Check addressed to KMJ Innovation, totaling $294,460.23 to

be placed in the U.S. Mail and mailed to an address in Los Angeles County that defendant JONES had access to or controlled.

Overt Act No. 37:   On April 8, 2023, defendant JONES paid a portion of the fraudulent refunds received from the IRS to defendant TURNER by causing the issuance of a cashier's check for $94,000 for the benefit of defendant TURNER.

Overt Act No. 38:   On April 8, 2023, defendant JONES paid a portion of the fraudulent refunds received from the IRS to defendant KNOX by causing the issuance of a cashier's check in defendant KNOX's name for $63,000.

Overt Act No. 39:   On April 24, 2023, defendant JONES paid a portion of the fraudulent refunds received from the IRS to defendant TURNER by causing the issuance of a cashier's check for $62,000 for the benefit of defendant TURNER.

Overt Act No. 40:   On April 24, 2023, defendant JONES paid a portion of the fraudulent refunds received from the IRS to defendant KNOX by causing the issuance of a cashier's check for $31,000 to Knox Lawn Service.

Overt Act No. 41:   On April 24, 2023, defendant JONES paid a portion of the fraudulent refunds received from the IRS to defendant KNOX by causing the issuance of a cashier's check for $31,000 to defendant KNOX.

Overt Act No. 42:   On January 24, 2024, defendant JONES used TaxBandits to access tax filing records for KMJ Freight.

**Defendant JONES Becomes a Recruiter for Defendant TURNER and Recruits Multiple Friends and Family Members to the Fraud**

Overt Act No. 43:   On May 16, 2023, the same day that defendant JONES texted defendant TURNER to ask "what name u want on this check

18

. . . 95k," defendant JONES caused the issuance of a cashier's check for $95,000 for the benefit of defendant TURNER, addressed to Kris Turner Enterprise.

Overt Act No. 44:  On May 18, 2023, defendant JONES caused the issuance of a cashier's check for $89,500 for the benefit of defendant TURNER, addressed to the name of a business controlled by a co-conspirator ("TURNER Nominee Business 1").

Overt Act No. 45:  On May 19, 2023, over text message, defendant TURNER sent defendant JONES a photograph of a notebook page that listed the names of the ten JONES Recruits and the dates that false Form 941s were submitted for each of those businesses, and stated that they were "All the ones we did."

Overt Act No. 46:  On May 19, 2023, defendant TURNER advised defendant JONES over text that she owed processing fees for JONES Recruit 9 and JONES Recruit 10, as well as fees to pay the Secretary of State filing fees for JONES Recruit 3 and JONES Recruit 9.

Overt Act No. 47:  On June 3, 2023, defendant JONES sent a text message to defendant TURNER, stating: "I'm gonna need how many employees for each quarter for all my folks," referring to the ten JONES Recruits, "People have been getting asked that information I heard."

Overt Act No. 48:  On June 5, 2023, defendant JONES texted defendant TURNER: "Hey I need a favor.  Can you send me the PDF tax identification form for [JONES Recruit 9 and JONES Recruit 1] . . . I need to fix some things . . . Also need them numbers . . . . They have an appointment at 11am."

Overt Act No. 49:  On June 16, 2023, via text message, defendant JONES informed defendant TURNER that bank accounts for the

JONES Recruits were being frozen: "We got a issue . . . Another account got closed . . . This shit is crazy . . . Fucking up my plans..smh."

Overt Act No. 50:   On July 15, 2023, in response to a text from defendant JONES stating, "Next week will have $48,445 off of $161,385 for you..From [Jones Recruit 1]," defendant TURNER responded, "Ok cool thank you . . . Mark Sandridge Auto Body."

Overt Act No. 51:   On July 26, 2023, defendant JONES caused the issuance of a cashier's check for $48,445 for the benefit of defendant TURNER, addressed to Mark Sandridge Auto Body.

Overt Act No. 52:   On July 26, 2023, in response to a text from defendant JONES asking, "What another company name," defendant TURNER texted the name of a business controlled by a co-conspirator ("TURNER Nominee Business 2").

Overt Act No. 53:   On July 26, 2023, defendant JONES caused the issuance of a cashier's check for $31,000 for the benefit of defendant TURNER, addressed to TURNER Nominee Business 2.

COUNTS TWO THROUGH NINETEEN

[18 U.S.C. § 1341]

[ALL DEFENDANTS]

16.  The Grand Jury realleges paragraphs 1 through 11 and 13 through 15 of this Indictment here.

A.  THE SCHEME TO DEFRAUD

17.  Beginning no later than June 2022 and continuing until at least in or around December 2024 in Los Angeles County, within the Central District of California, and elsewhere, defendants TURNER, KNOX, JONES, and JOHNSON, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the IRS and the United States government as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises.

18.  The fraudulent scheme operated, in substance, as described in paragraph 13 of this Indictment.

B.  USE OF THE MAILS

19.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, the following defendants, aiding and abetting each other, for the purpose of executing the above-described scheme to defraud, willfully caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon:

| COUNT | DEFENDANT | DATE | ITEM MAILED |
|-------|-----------|------|-------------|
| TWO | TURNER | 1/16/2023 | A Treasury Check for $260,275.39 addressed to Turner Auto Shop, Kris Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 250 E Sepulveda Blvd Ste 1147, Carson, CA 90745. |
| THREE | TURNER | 1/16/2023 | A Treasury Check for $250,389.41 addressed to Turner Auto Shop, Kris Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 250 E Sepulveda Blvd Ste 1147, Carson, CA 90745. |
| FOUR | TURNER | 1/16/2023 | A Treasury Check for $250,389.41 addressed to Turner Auto Shop, Kris Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 250 E Sepulveda Blvd Ste 1147, Carson, CA 90745. |
| FIVE | TURNER | 1/16/2023 | A Treasury Check for $242,520.33 addressed to Turner Auto Shop, Kris Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 250 E Sepulveda Blvd Ste 1147, Carson, CA 90745. |
| SIX | TURNER | 2/14/2023 | A Treasury Check for $528,254.29 addressed to Mark Sandridge Auto Body LLC, Kristerpher G Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 8704 S. Sepulveda Boulevard 1056, Westchester, CA 90045. |

| COUNT | DEFENDANT | DATE | ITEM MAILED |
|---|---|---|---|
| SEVEN | TURNER, KNOX, JOHNSON | 2/16/2023 | A Treasury Check for $249,046.89 addressed to Joyce M Johnson, Jays Mobile Cleaning Service, sent by U.S. Mail from the Department of the Treasury to 12215 Shadow Dr., Victorville, California. |
| EIGHT | TURNER, KNOX, JOHNSON | 2/16/2023 | A Treasury Check for $212,181.06 addressed to Joyce M Johnson, Jays Mobile Cleaning Service, sent by U.S. Mail from the Department of the Treasury to 12215 Shadow Dr., Victorville, California. |
| NINE | TURNER, KNOX, JOHNSON | 2/16/2023 | A Treasury Check for $169,223.92 addressed to Joyce M Johnson, Jays Mobile Cleaning Service, sent by U.S. Mail from the Department of the Treasury to 12215 Shadow Dr., Victorville, California. |
| TEN | TURNER | 3/21/2023 | A Treasury Check for $283,775.42 addressed to Turner Auto Shop, Kris Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 250 E Sepulveda Blvd Ste 1147, Carson, CA 90745. |
| ELEVEN | TURNER | 3/21/2023 | A Treasury Check for $283,775.42 addressed to Turner Auto Shop, Kris Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 250 E Sepulveda Blvd Ste 1147, Carson, CA 90745. |

| COUNT | DEFENDANT | DATE | ITEM MAILED |
|---|---|---|---|
| TWELVE | TURNER | 3/21/2023 | A Treasury Check for $284,975.16 addressed to Turner Auto Shop, Kris Turner Sole Mbr, sent by U.S. Mail from the Department of the Treasury to 250 E Sepulveda Blvd Ste 1147, Carson, CA 90745. |
| THIRTEEN | TURNER, KNOX, JOHNSON | 2/28/2023 | A Treasury Check for $253,358.97 addressed to Joyce M Johnson, Jays Mobile Cleaning Service, sent by U.S. Mail from the Department of the Treasury to 12215 Shadow Dr., Victorville, California. |
| FOURTEEN | TURNER, KNOX, JONES | 3/28/2023 | A Treasury Check for $294,460.23 addressed to KMJ Innovation LLC, sent by U.S. Mail from the Department of the Treasury to 1702 W 137th Street, Compton, California 90222. |
| FIFTEEN | TURNER, KNOX, JONES | 3/28/2023 | A Treasury Check for $305,041.66 addressed to KMJ Innovation LLC, sent by U.S. Mail from the Department of the Treasury to 1702 W 137th Street, Compton, California 90222. |
| SIXTEEN | TURNER, KNOX, JONES | 3/28/2023 | A Treasury Check for $284,936.93 addressed to KMJ Innovation LLC, sent by U.S. Mail from the Department of the Treasury to 1702 W 137th Street, Compton, California 90222. |
| SEVENTEEN | TURNER, KNOX, JONES | 3/28/2023 | A Treasury Check for $274,537.33 addressed to KMJ Innovation LLC, sent by U.S. Mail from the Department of the Treasury to 1702 W 137th Street, Compton, California 90222. |

| COUNT | DEFENDANT | DATE | ITEM MAILED |
|-------|-----------|------|-------------|
| EIGHTEEN | TURNER,<br><br>KNOX,<br><br>JONES | 3/28/2023 | A Treasury Check for $274,537.33 addressed to KMJ Innovation LLC, sent by U.S. Mail from the Department of the Treasury to 1702 W 137th Street, Compton, California 90222. |
| NINETEEN | TURNER,<br><br>KNOX,<br><br>JONES | 3/28/2023 | A Treasury Check for $222,435.75 addressed to KMJ Innovation LLC, sent by U.S. Mail from the Department of the Treasury to 1702 W 137th Street, Compton, California 90222. |

COUNT TWENTY

[18 U.S.C. § 286]

[ALL DEFENDANTS]

20.   The Grand Jury realleges paragraphs 1 through 11 and 13 through 15 of this Indictment here.

A.   OBJECT OF THE CONSPIRACY

21.   Beginning no later than in or around June 2022 and continuing until at least in or around December 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants TURNER, KNOX, JONES, and JOHNSON, knowingly and unlawfully agreed, combined, and conspired with each other, and with others known and unknown to the Grand Jury, to defraud the United States and the IRS by obtaining and aiding to obtain the payment of false, fictitious, and fraudulent claims, specifically, the filing of false federal tax returns containing fraudulent claims for tax refunds based upon false and fictitious amounts of paid sick and family leave claimed to have been paid, reported on false Form 941s and Form 944s, that defendants caused to be filed with the IRS.

B.   MANNER AND MEANS OF THE CONSPIRACY

22.   The object of the conspiracy was to be carried out, and was carried out, in substance, as alleged in paragraph 13 of this Indictment.

C.   OVERT ACTS

23.   In furtherance of the conspiracy and to accomplish its object, defendants TURNER, KNOX, JONES, and JOHNSON, together with others known and unknown to the Grand Jury, committed and caused to be committed the overt acts set forth in paragraph 15 of this

Indictment, among others, in the Central District of California, and
elsewhere, on or about the dates set forth therein.

COUNT TWENTY-ONE

[18 U.S.C. §§ 1512(a)(1)(C); 2]

[DEFENDANTS KNOX AND JONES]

24.  The Grand Jury realleges paragraphs 1 through 11 and 13 through 15 of this Indictment here.

25.  On or about August 29, 2023, in Los Angeles County, within the Central District of California, defendants KNOX and JONES, and others known and unknown to the Grand Jury, including Co-Conspirator 2, and Co-Conspirator 3, each aiding and abetting each other, attempted to kill, and willfully caused an attempt to kill, another person, namely, Kristerpher Turner, with intent to prevent the communication by any person to a law enforcement officer relating to the commission or possible commission of at least one Federal offense, including conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349, mail fraud, in violation of Title 18, United States Code, Section 1341, and conspiracy to submit false, fictitious, or fraudulent claims, in violation of Title 18, United States Code, Section 286, as charged in Counts One through Twenty of this Indictment.

COUNT TWENTY-TWO

[18 U.S.C. §§ 924(c)(1)(A); 2]

[DEFENDANTS KNOX AND JONES]

26.  The Grand Jury realleges paragraphs 1 through 11 and 13 through 15 of this Indictment here.

27.  On or about August 29, 2023, in Los Angeles County, within the Central District of California, defendants KNOX and JONES, along with Co-Conspirator 2, and Co-Conspirator 3, each aiding and abetting each other, willfully caused the knowing use and carrying of a firearm during and in relation to, and the possession of a firearm in furtherance of, a crime of violence, namely, attempt to kill a witness, in violation of Title 18, United States Code, Section 1512(a)(1)(C), as charged in Count Twenty-One of this Indictment, and, in so doing, willfully caused the brandishing and discharge of the firearm.

1                            FORFEITURE ALLEGATION ONE

2               [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3       28.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 18,

6    United States Code, Section 981(a)(1)(C) and Title 28, United States

7    Code, Section 2461(c), in the event of any defendant's conviction of

8    the offenses set forth in any of Counts One through Nineteen or

9    Twenty-One of this Indictment.

10      29.    Any defendant so convicted shall forfeit to the United

11   States of America the following property:

12          (a)   all right, title, and interest in any and all

13   property, real or personal, constituting, or derived from, any

14   proceeds traceable to the offenses, including but not limited to the

15   following:

16          • $32,998.61 in Bank Funds seized from a JPMorgan Chase

17   Bank account ending in 2106;

18          • $305,691.81 in Bank Funds seized from a JPMorgan Chase

19   Bank account ending in 7887;

20          • $72,165.66 in Bank Funds seized from a JPMorgan Chase

21   Bank account ending in 9018;

22          • $282,657.34 in Bank Funds seized from a JPMorgan Chase

23   Bank account ending in 8809;

24          • $50,000.00 in Bank Funds seized from a JPMorgan Chase

25   Bank account ending in 3902;

26          • $944,663.80 in Bank Funds seized from a JPMorgan Chase

27   Bank account ending in 5359;

28          • $65,646.60 in Bank Funds seized from a JPMorgan Chase

1   Bank account ending in 8997;

2          • $150,000.00 in Bank Funds seized from a JPMorgan Chase

3   Bank account ending in 0244;

4          • $249,490.30 in Bank Funds seized from a JPMorgan Chase

5   Bank account ending in 2589;

6          • $440,606.40 in Bank Funds seized from a JPMorgan Chase

7   Bank account ending in 6008;

8          • $250,000.00 in Bank Funds seized from a JPMorgan Chase

9   Bank account ending in 4220;

10          • $130,206.20 in Bank Funds seized from a JPMorgan Chase

11   Bank account ending in 8352;

12          • $42,599.76 in Bank Funds seized from a JPMorgan Chase

13   Bank account ending in 3315;

14          • $100,000.00 in Bank Funds seized from a JPMorgan Chase

15   Bank account ending in 8379;

16          • $20,000.00 in Bank Funds seized from a JPMorgan Chase

17   Bank account ending in 1036;

18          • $334,219.59 in Bank Funds seized from a JPMorgan Chase

19   Bank account ending in 6885;

20          • Real property commonly known as 1119 S Orange Dr, Los

21   Angeles, CA 90019 (APN 5084-020-013); and

22          • Real property commonly known as 5631 Marburn Ave, Los

23   Angeles, CA 90043 (APN 5008-011-012).

24          (b)  To the extent such property is not available for

25   forfeiture, a sum of money equal to the total value of the property

26   described in subparagraph (a).

27          3.   Pursuant to Title 21, United States Code, Section 853(p),

28   as incorporated by Title 28, United States Code, Section 2461(c), any

defendant if so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

30.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Twenty-Two of this Indictment.

31.  Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

32.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4                                          A TRUE BILL

5

6                                          /s/
                                           _____
7                                          Foreperson

8  BILAL A. ESSAYLI
   United States Attorney
9

10 *Christina Shay*

11 CHRISTINA T. SHAY
   Assistant United States Attorney
12 Chief, Criminal Division

13 KRISTEN A. WILLIAMS
   Assistant United States Attorney
14 Chief, Major Frauds Section

15 JOSHUA O. MAUSNER
   Assistant United States Attorney
16 Chief, Violent and Organized
   Crimes Section
17
   KEVIN BUTLER
18 Assistant United States Attorney
   Deputy Chief, Violent and
19 Organized Crimes Section

20 KEVIN REIDY
   HAOXIAOHAN CAI
21 Assistant United States Attorneys
   Major Frauds Section
22

23

24

25

26

27

28

                                34